UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA R SHEEHAN,<br><br>    Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>    Defendant. | Case No. 18-cv-02073-JCS<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 7 |

## I. INTRODUCTION

Plaintiff Teresa Sheehan filed this action in the California Superior Court for Contra Costa County, bringing four claims related to the termination of her employment by Defendant Kaiser Foundation Health Plan, Inc. ("Kaiser"), all purportedly under state law. Kaiser removed to this Court asserting federal subject matter jurisdiction based on complete preemption under the Employee Retirement Income Security Act ("ERISA"). Sheehan now moves to remand on the basis that her claims are not subject to complete preemption. The Court held a hearing on May 18, 2018. For the reasons discussed below, the motion to remand is DENIED.[1]

## II. BACKGROUND

### A. Allegations of the Complaint

Sheehan worked for Kaiser from December 3, 2012 until March 13, 2017, most recently as a sales executive. Notice of Removal (dkt. 1) Ex. A (Compl.) ¶ 9. In the final months of her employment, Sheehan candidly discussed with her supervisors her need to care for her ailing father, including whether it would be necessary for her to take a leave of absence to do so. *Id.* ¶ 13. On January 12, 2017, Kaiser informed Sheehan that her employment would be terminated

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

effective March 13 for reasons unrelated to her job performance. *Id.* ¶ 10. Sheehan was fifty-six years old at the time of her termination and had worked in the workers' compensation field for more than thirty years. *Id.* ¶ 9.

Both Kaiser's management and its human resources department repeatedly told Sheehan that the termination would allow her to spend time with her father. *Id.* ¶ 14. Because Sheehan had not discussed her father's illness with the human resources department, she believes that her supervisors discussed it with human resources and that her potential need for family medical leave contributed to the decision to terminate her employment, as well as the decision not to place Sheehan in an open senior account manager position. *Id.* ¶¶ 14–15.

A portion of Sheehan's compensation consisted of incentive pay, which sales executives received one year after a deal closed. *Id.* ¶ 11. Sheehan's termination deprived her of approximately $70,000 of incentive pay for deals that she had substantially completed. *Id.* Of particular to importance to the present motion, Sheehan also alleges that "Kaiser timed [Sheehan's] termination so as to occur approximately three months before the June 24, 2017, date on which [her] retirement benefits otherwise would have vested, causing [her] enormous financial loss." *Id.* ¶ 12.

Sheehan's complaint includes four claims: (1) breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 17–20; (2) age discrimination and harassment in violation of the California Fair Employment and Housing Act ("FEHA"), *id.* ¶¶ 21–31; (3) discrimination, retaliation, and harassment based on family medical leave in violation of the California Family Rights Act ("CFRA"), *id.* ¶¶ 32–38; and (4) wrongful termination in violation of public policy, *id.* ¶¶ 39–45. Sheehan's first and fourth claims are based in part on Kaiser's alleged decision to terminate Sheehan to avoid paying pension benefits. *See id.* ¶ 18 (listing, as one form of bad faith conduct, Kaiser "timing [Sheehan's] termination so that such termination would be a mere 3½ months prior to the June 24, 2017, date on which [her] Kaiser retirement benefits were scheduled to vest"); *id.* ¶ 42 (listing, as one policy violated by Sheehan's termination, "the public policy prohibiting an employer from depriving an employee of her retirement benefits via manipulating the employee's termination date to occur shortly before the retirement benefits vesting date, as set forth in the

2

Employee Retirement Income Security Act ('ERISA'), 29 U.S.C.A. § 1022").[2]

### B. Procedural History and Parties' Arguments

Sheehan filed this action in state court on March 1, 2018. *See generally* Compl. Kaiser removed to this Court on April 5, 2018, asserting that ERISA completely preempts "at least some of [Sheehan's] claims," and specifically noting Sheehan's allegations that Kaiser terminated her for the purpose of depriving her of retirement benefits. Notice of Removal ¶ 3.

Kaiser's attorney Andrea Bednarova emailed Sheehan's attorney Daniel Bartley on Sunday, April 8, 2018 requesting the use of his electronic signature for a stipulation that the parties had reached but not filed while the case was in state court, and stating that she "presume[ed] [he] had received the Notice of Removal." Bartley Decl. (dkt. 8) Ex. A. Bartley responded the same day that he had been out of the office the previous week, and asked Bednarova to email him the removal documents, which Bednarova did the following morning. *Id.* Bartley replied that afternoon with a demand that Kaiser stipulate to remand the case "without delay" on the grounds that Sheehan asserted only state law claims and that "ERISA preemption issues can be complicated, but understanding the difference between complete and conflict preemption is critical to the removal decision." *Id.* Bednarova responded that she was busy with other commitments for the early part of the week but would review the cases Bartley cited and respond by the end of the week. *Id.* Bartley replied that he hoped another attorney at Bednarova's firm could look into the issue because he intended to file a motion to remand the next day, April 10, which he in fact did. *Id.*; *see generally* Mot. (dkt. 9).

Sheehan's present motion asserts that the case should be remanded based on the test set forth in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), where the Supreme Court held that ERISA completely preempts claims where an "an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated." *Davila*, 542 U.S. at 210; *see* Mot. at 5.

---

[2] There is no dispute that the pension plan at issue falls within the scope of ERISA. *See* Compl. ¶ 42; Reid Decl. (dkt. 17-1) ¶ 2; Reply (dkt. 18) at 6.

3

Sheehan argues that this case is analogous to a Ninth Circuit decision holding that ERISA did not preempt a claim for breach of contract where the plaintiff hospital alleged that the defendant insurer failed to honor an oral agreement to pay a certain amount for a patient's treatment and instead paid a lower amount that would have otherwise been due under the patient's ERISA plan. Mot. at 5–6 (citing *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009)). Sheehan seeks remand and an award of reasonable attorneys' fees. *Id.* at 7.

Kaiser opposes remand, arguing that the Supreme Court's decision in *Ingersoll-Rand v. McClendon*, 498 U.S. 133 (1990), controls here, because the Court held in that case that a state law claim for wrongful termination to avoid paying retirement benefits was preempted by ERISA, and because the Court reaffirmed the holding of *Ingersoll-Rand* in its later *Davila* decision. Opp'n (dkt. 17) at 4–6. According to Kaiser, Sheehan's first and fourth claims are preempted, and thus properly subject to removal, because section 510 of ERISA prohibits terminating an employee "'for the purpose of interfering with the attainment of any right to which such participant may become entitled'" under an ERISA benefits plan. *Id.* at 6 (quoting 29 U.S.C. § 1140) (emphasis omitted). Kaiser contends that the test of *Davila* supports removal in this case and that the Ninth Circuit's *Marin General Hospital* decision is distinguishable. *Id.* at 7–8.

In her reply brief, Sheehan argues that courts have taken a more restrictive view of ERISA preemption in the three decades since the Supreme Court decided *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41 (1987), a case briefly referenced in Kaiser's opposition. Reply (dkt. 18) at 1–3. With respect to *Ingersoll-Rand*, Sheehan contends that subsequent Supreme Court decisions narrowed the scope of the phrase "relate to an employee benefit plan" in ERISA section 514's preemption clause, and that "in determining whether ERISA preempts state common law causes of action for wrongful discharge, both the Supreme Court and the Ninth Circuit have focused on the employer's alleged motive in terminating the employee." *Id.* at 4–6. Sheehan cites a number of Ninth Circuit decisions holding that claims were not preempted where losing benefits was merely an effect of a plaintiff-employee's termination, or even where it might have been a defendant-employer's motivation but was not the basis for the plaintiff-employee's claim. *Id.* at 6–7. According to Sheehan, her case is distinguishable from *Ingersoll-Rand* because Kaiser's decisions

4

"were motivated by multiple considerations," and were not *solely* intended to deny Sheehan benefits under her ERISA plan. *Id.* at 7–8.

## III. ANALYSIS

### A. Legal Standard

Federal courts have limited subject matter jurisdiction and may only hear cases falling within their jurisdiction. Generally, a defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. The removal statutes are construed restrictively so as to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108−09 (1941). The Ninth Circuit recognizes a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted). Any doubts as to removability should be resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the burden of showing that removal is proper. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

"As a general rule, '[t]he presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, (1987)) (alteration in original). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. A corollary to this rule, however, is the "complete preemption" doctrine, under which a federal statute may "completely preempt" an area of state law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

The complete preemption doctrine applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) ("[I]f a federal cause of action completely

5

pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *Fayard v. Ne. Vehicle Servs.*, 533 F.3d 42, 45 (1st Cir. 2008) ("Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim."). ERISA section 502(a) is one of only a handful of federal statutes that the Supreme Court has recognized as establishing complete preemption that allows for removal of claims purportedly brought under state law. *Davila*, 542 U.S. at 208–09; *see also Californians for Alternatives to Toxics v. N. Coast R.R. Auth.*, No. C-11-04102 JCS, 2012 WL 1610756, at *8 (N.D. Cal. May 8, 2012) (discussing the limited circumstances where the Supreme Court has recognized complete preemption).

**B. Sheehan's Claims Are Preempted to the Extent They Are Based on Kaiser's Intent to Deprive Her of Benefits**

In *Davila*, the Supreme Court recognized that due to its comprehensive nature and similarities to the Labor Management Relations Act, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" and "'causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court.'" *Davila*, 542 U.S at 209 (quoting *Metro. Life Ins.*, 481 U.S. at 65–66) (alteration in original). Addressing the claims at issue in that case, which involved the scope of health coverage under certain ERISA plans, the Court explained the rule as follows:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life*, *supra*, at 66. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210. The test described in *Davila* has two parts: (1) whether the plaintiff's claim could have been brought under ERISA; and (2) whether there is a separate legal duty independent of ERISA.

6

*See id.*

The first element is easily satisfied here. Under section 510 of ERISA, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit] plan." 29 U.S.C. § 1140. That provision is enforceable under section 502(a), which provides that plan participants may bring civil actions for equitable relief to enforce their rights under the subchapter of ERISA at issue. *Id.* § 1132(a)(3); *see Ingersoll-Rand*, 498 U.S. at 142–45. Sheehan therefore could have brought a claim under ERISA alleging that Kaiser terminated her to avoid her ERISA benefits vesting.

The second element might, in a vacuum, present a closer question as to whether state policies and the covenant of good faith and fair dealing constitute independent legal duties preventing Kaiser from terminating Sheehan to avoid paying her benefits. There is not, however, a vacuum of authority as to whether Sheehan's claims are preempted. "In determining whether ERISA preempts state common law causes of action for wrongful discharge, both the Supreme Court and the Ninth Circuit have focused on the employer's alleged motivation in terminating the employee, concluding that a claim is preempted when the complaint alleges that 'the employer had a pension-defeating motive in terminating the employment.'" *Campbell v. Aerospace Corp.*, 123 F.3d 1308, 1312 (9th Cir. 1997) (quoting *Ingersoll-Rand*, 498 U.S. at 140). In *Ingersoll-Rand*, the Supreme Court held that a Texas common law claim for wrongful termination in violation of public policy was subject to complete preemption where the plaintiff alleged that he was terminated to avoid the vesting of his retirement benefits and the Supreme Court of Texas recognized that termination on that basis violated public policy, including policy embodied in ERISA. *See Ingesoll-Rand*, 498 U.S. at 135–36, 142–44; *see also McClendon v. Ingersoll-Rand*, 779 S.W.2d 69, 70–71 (Tex. 1989). *Davila*, rather than casting doubt on the holding of *Ingersoll-Rand*, cited it with approval and confirmed that the claim at issue in that case was preempted. *Davila*, 542 U.S. at 214–16 ("And, in all these cases, the plaintiffs' claims were pre-empted."). The Ninth Circuit has similarly held, both before and after *Ingersoll-Rand*, "that where the plaintiff's claim or theory alleged that the employer terminated the employee to avoid paying

7

benefits or sought to prevent the discharged employee from obtaining benefits, ERISA preempted the claim." *Campbell*, 123 F.3d at 1313 (collecting authority).

Here, Sheehan specifically alleges that "Kaiser timed [her] termination so as to occur approximately three months before the . . . date on which [her] retirement benefits otherwise would have vested," Compl. ¶ 12, thus indicating that "the employer had a pension-defeating motive in terminating the employment." *Cf. Ingersoll-Rand*, 498 U.S. at 140; *Campbell*, 123 F.3d at 1312. This case is therefore distinguishable from decisions where the Ninth Circuit found no preemption because the loss of benefits was merely a consequence, rather than a purpose, of the defendant's decision to fire the plaintiff. *Cf. Campbell*, 123 F.3d at 1313; *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1405 (9th Cir. 1988). Sheehan also specifically bases her wrongful termination claim in part on "the public policy prohibiting an employer from depriving an employee of her retirement benefits via manipulating the employee's termination date to occur shortly before the retirement benefits vesting date, as set forth in [ERISA]." Compl. ¶ 42. This case is therefore distinguishable from *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971 (9th Cir. 1993), where the plaintiff speculated in his deposition testimony that depriving him of his pension might have been a motive for his firing, but declined to bring a claim based on that theory, and asserted that he did not have a sufficient factual basis to do so consistent with Rule 11. *See Karambelas*, 992 F.2d at 974. This case is *not* distinguishable from *Ingersoll-Rand* where, like here, the plaintiff sought to base a common law wrongful termination claim on violation of policies embodied in ERISA, and where the Supreme Court held that such a claim was subject to complete preemption. *See generally* 498 U.S. 133.

The only basis Sheehan presents for distinguishing *Ingersoll-Rand* and similar cases is that she does "not claim that her employer's *sole motive* in terminating her was the destruction of her retirement benefits" because her complaint also includes other theories of why her termination was wrongful, Reply at 7, and that certain of her claims, such as her FEHA and CFRA claims, do not implicate ERISA in any way, *id.* at 8. Sheehan is correct that such claims and theories are not preempted by ERISA, but that does not alter the outcome of the present motion to remand. So long as at least one of her claims—most clearly, her claim for wrongful termination to deprive her

8

of pension benefits[3]—is "recharacterized" as a federal claim, *see Fayard*, 533 F.3d at 45, her remaining claims and theories also fall within the Court's supplemental subject matter jurisdiction under 28 U.S.C. § 1367(a), because all "are so related to" the recharacterized ERISA claim "that they form part of the same case or controversy" arising from Sheehan's termination. The case as a whole was therefore properly subject to removal.

## IV. CONCLUSION

For the reasons discussed above, Sheehan's claims that Kaiser terminated her to prevent her pension benefits from vesting are completely preempted by ERISA, and thus fall within federal subject matter jurisdiction. Sheehan's remaining claims fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367. The motion to remand is therefore DENIED.

**IT IS SO ORDERED.**

Dated: May 25, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge

---

[3] Although the analysis of this order focuses on Sheehan's wrongful termination claim because it is most directly analogous to applicable precedent, the same reasoning applies to her claim based on the implied covenant of good faith and fair dealing to the extent that it is premised on a theory that Kaiser terminated Sheehan for the purpose of preventing her pension benefits from vesting.

9